Warren MORROW and Betty
Morrow, Appellants,

v.

Woodye MORROW and Dennis M.
Morrow, Appellees.

No. 52768.

Court of Appeals of Oklahoma,
Division No. 1.

April 8, 1980.

Rehearing Denied May 6, 1980.

Released for Publication by Order of
Court of Appeals June 12, 1980.

Arney, Barker & Coit by Everett M. Arney, Stephen G. Coit, Clinton, for appellants.

Smith & Wright by Newell E. Wright, Cheyenne, Luttrell, Pendarvis & Rawlinson by John M. Luttrell, Norman, for appellees.

ROMANG, Judge:

The Plaintiffs-Appellants, Warren and Betty Morrow (husband and wife), brought this action to recover for services rendered to the decedent Maude Morrow, mother of Warren and Defendant-Appellee Woodye Morrow. They also sought to set aside a conveyance of certain mineral interests from Woodye to Defendant-Appellee Dennis M. Morrow, Woodye's son. This conveyance was made without consideration. Woodye had acquired title from Maude by warranty deed.

At trial the District Court, sitting without a jury as chancellor, found the evidence insufficient to support the Plaintiffs' claim for services and ordered the mineral conveyance set aside and the proceeds of the surface sale (less certain expenses) and mineral rights be evenly distributed to 8 surviving children of Maude.

The motion for new trial does not meet the standards noted in *Federal Corp. v. Ind. School Dist. No. 13*, 606 P.2d 1141 (Okl.Ct.App.1978) 51 O.B.J. 384 (1980). This decision was made prospective only by the Supreme Court, 51 O.B.J. 531 (1980). We interpret prospective to mean it applies only to motions filed after February 8, 1980, the date our opinion was adopted by the Supreme Court.

The Plaintiffs' theory was that after receiving title to Maude's real property, Woodye orally agreed with Plaintiffs that if they would care for Maude that on her death Woodye would sell the property and first pay the Plaintiffs for the care of Maude and divide the remainder equally among her heirs.

The District Court's Journal Entry indicated he found that Woodye had received the property in trust for the purpose of taking care of Maude and that "there is no clear and convincing evidence of an agreement for them to be paid for their services, and therefore, same are presumed to be gratuitous."

The matter is treated by the parties as one of equitable cognizance although the central feature now in dispute is the existence of an oral contract between Woodye and the Plaintiffs entitling the Plaintiffs to payment for services. As an oral contract made before November 23, 1973 (the date of Maude's death) the action would have been barred by the 3 year statute of limitations in January, 1978 but for Defendants' failure to raise the issue.

As an action to impose a trust and to enforce an oral contract, the question was a mixed one of law and equity. Furthermore, the issues were basically independent, i. e. whether an oral agreement to pay for services was independent of whether Woodye held title as trustee. Neither predominated. Consequently, we must review the contract action as a matter of law. As such the findings of the trial court, sitting without a jury, are entitled to the weight of a jury's verdict, i. e. they must be affirmed if supported by any probative evidence. *Russell v. Freeman*, 202 Okl. 421, 214 P.2d 443 (1955), and *Snodgrass v. State ex rel. Dept. of Pub. Saf.*, Okl., 551 P.2d 259 (1976).

Reviewing the record is confusing. The trial judge's journal entry indicates he did not find any "clear and convincing" evidence of an agreement. If he meant that as a technical statement of Plaintiffs' burden he was in error. The oral contract with Woodye need only be proven by a preponderance of evidence. It is also clear that he relied on the general principle that family arrangements are not presumed to be attendant with contractual consequences. Whether he viewed this as a factual presumption based on accumulated judicial experience but always susceptible to rebuttal, which it is, or a rule of law, which it is not, is unclear.

On appeal we must find error or affirm. It is not sufficient that we are unclear. It is the appellant's burden to show error below except in cases of manifest injustice or a record devoid of facts supporting the judgment in the application of accurate rules.

Whether there was a contract is a matter as to which the party asserting the contract has the burden. *Nat. Sur. Co. v. Bd. of Ed. of City of Hugo*, 36 Okl. 569, 129 P. 25 (1912).[1] As part of the fact finders process, courts are convinced that in our society the vast majority of family arrangements are not expected to be attended with contractual consequences. *Cf. In re Smith's Estate*, 202 Okl. 302, 213 P.2d 284 (1949). This expectation may be upset by any facts showing the parties expected to be bound legally—an element not normally relevant in agreements between nonfamily members. As Corbin says:

> The following statements may be of assistance in distinguishing between nonenforceable social engagements and contractual agreements: 1. If the subject matter and terms of a transaction are such as customarily have affected legal relations and there is nothing to indicate that the one now asserting their existence had reasons to know that the other party intended not to affect his legal relations, thus the transaction will be operative legally. 2. If the subject matter and terms are not such as customarily have affected legal relations, the transaction is not legally operative unless the expressions of the parties indicate an intention to make it so. (Footnotes omitted.) 1 Corbin on Contracts § 34. See also Restatement of Contracts (Second) § 21B comment c (T.D. 1973).

Nothing in our cases hold that family members may not make their arrangements contractual in nature. See *In re Smith's Estate, supra.* Rather the point of our cases and scholarly comment is that there is a

---

1. Appellant relies on *Mosley v. Mosley*, Okl., 321 P.2d 421 (1958), for the proposition that the burden to show that services rendered were gratuitous is on the party refusing payment. This misreads the language quoted from *Mosley.* That case establishes that the party denying liability has the burden of showing the services were gratuitous where the services were performed by someone not a member of the family. Taking the view of the facts which we take, the case is inapposite.

norm of societal expectation. The subject matter here involved is care for an invalid mother. Such arrangements are frequently gratuitous, founded in love and affection. But where there are a number of children, it is also frequently the case that one child and spouse will undertake primary care and the others will contribute financially in agreed amounts or as they can. Whether these arrangements are contractual or not depends on the intent of the parties. But in such cases the party asserting the contract has the burden of setting aside our belief that most such arrangements are not contractual.

 It is also argued that Betty as a daughter-in-law is not "family" for purposes of the rule. We do not take the language in *In re Smith's Estate, supra*, as Appellant urges. The Supreme Court endorsed a factual definition of family not solely related to legal concepts of consanguinity. It is the reality that matters.

Where a group of persons reflect reciprocal duties of a natural, or moral nature for support and care, there is a family relationship *insofar as this factual presumption is concerned*. Where this relationship exists our assumptions that the arrangement is not intended to be attended with contractual consequences is appropriate.

In this case the trier of fact was unpersuaded. Based on the record evidence we cannot say as a matter of law he was wrong. Accordingly, we affirm.

AFFIRMED.

REYNOLDS, P. J., and BOX, J., concur.